IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH TRUJILLO,<br><br>   Plaintiff,<br><br>   v.<br><br>CITY OF SAN LEANDRO, et al.,<br><br>   Defendants.                              / | No. C 09-0620 CRB<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff has sued the City of San Leandro, Sergeant Dewayne Stancill, and Luis Torres for gender-based discrimination, sexual harassment, and unlawful retaliation. All three defendants have moved for summary judgment. First, as to Defendant San Leandro, Plaintiff does not have evidence to make a prima facie case of discrimination or sexual harassment. As for retaliation, Plaintiff's claims fail both because of her inability to make a prima facie case as to some allegations, and her failure to rebut Defendant's evidence of a non-discriminatory rationale. As to Defendant Stancill, Plaintiff has failed to show the sort of behavior that can give rise to a claim for hostile work environment sexual harassment. Without such evidence, her claim cannot survive. As to Defendant Torres, Plaintiff has submitted virtually no evidence regarding his role in any alleged harassment.

Therefore, the motions are GRANTED.

//

## Background

Plaintiff Trujillo joined the San Leandro Police Department as a police officer in August 2002. In October of 2007, Defendant Stancill was promoted to sergeant and became Trujillo's supervisor. He remained her supervisor until January of 2008. Hynes Decl., ex. A at 248:15-18. When Stancill first became Trujillo's supervisor, he referred to her a number of times as "baby." On December 17, 2008, Plaintiff informed Stancill that she objected to his use of that nickname. Kivel Decl., ex. G, at 3:13-19, ex. E, at 228:20-24. Plaintiff has testified that Stancill immediately stopped using that term. Id., ex. D, at 49:2-10, ex. E, at 244:6-10. After December 14, 2007, Stancill acted as Plaintiff's supervisor on only six or seven days,[1] and he never again referred to her as "baby." Stancill Decl., ¶¶ 6, 10.

During this short period, however, Plaintiff alleges that Stancill retaliated against her, presumably in response to her request that he cease referring to her as "baby." According to Plaintiff, Stancill repeatedly rejected her reports, requiring her to make numerous corrections. She further testified that Stancill failed to respond to one of Plaintiff's deceased on arrival calls, and then later forced her to make unnecessary "corrections" to the resultant report. Usoz Decl., ex. C, at 293:13-18; 294:2-7. Finally, Plaintiff testified that Stancill passed over Plaintiff during line-up, singled her out when he wanted to speak with her about overtime slips, and falsely represented that he had written up Plaintiff in the employee incident log. Id., ex C, at 299:5-10; 300.

Plaintiff filed her Equal Employment Opportunity Commission ("EEOC") charge on June 16, 2008. The EEOC forwarded her charge to the Department of Fair Employment and Housing ("DEF") on August 15, 2008. Plaintiff filed her complaint in state court on January 8, 2009, and Defendants removed the case to federal court on February 11, 2009. This case was originally coordinated with five other cases brought by female employees of the police department. Four of the other cases have been dismissed pursuant to settlement agreements,

---

[1] Plaintiff concedes this point. See Kivel Decl., ex. E, at 228:25-231:21 (Trujillo testifying that, after December 14, she was on duty with Stancill for "six or seven days").

2

and the fifth has been voluntarily dismissed with prejudice. This is the only case that remains pending.

**Legal Standard**

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (usually the defendant) has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

In determining whether to grant or deny summary judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal quotations omitted). Rather, a court is entitled to rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment. See id.

//
//
//

**Discussion**

Because Plaintiff asserts different claims against different defendants, and each claim has a different legal standard, this memo will address each claim separately.

**A.     Rule 56(f)**

As an initial matter, Plaintiff has moved under Rule 56(f) to continue the hearing in light of the fact that Defendant San Leandro recently amended its answer, and because she had been unable to take certain depositions. See Dkt. #75. First, she argues that further discovery is necessary in light of the City's recently amended answer. She suggests that she did not have sufficient notice of the City's assertion of a statute of limitations defense or its defense based on the *Ellerth/Faragher* line of cases. This is unpersuasive. As to the statute of limitations issue, Plaintiff was placed on notice by the original answer that the City would assert a defense based upon "the applicable statutes of limitations." Dkt. #19, at 8. While the original answer listed state statutes as examples, the answer clearly indicated that the list was not exhaustive. See id. (listing the applicable statutes of limitations as "including without limitations" three provisions of California law). Moreover, Plaintiff has failed to explain how any of the requested discovery could yield information relevant to the statute of limitations. While one requested deposition, that of the Human Resource Director, could be relevant to the *Ellerth/Faragher* defense, Plaintiff fails to explain how any further discovery would be relevant to the statutes of limitations. And even if Plaintiff is correct that the *Ellerth/Faragher* defense was only recently asserted, the motions at issue here can be resolved on entirely independent grounds. In other words, Defendants are entitled to summary judgment regardless of the outcome of the *Ellerth/Faragher* defense.

Plaintiff also argues in a general fashion that, because certain witnesses were previously unavailable for a variety of reasons, the hearing should be continued to permit her to obtain their testimony by way of declaration. She cites as an example Rick and Corrie Turner, who have resided in Australia for some period of time. However, Plaintiff's counsel notes that he previously met with the Turners, and does not explain why he failed to obtain a declaration at that time. Moreover, Plaintiff's counsel fails to explain why he has otherwise

4

1  been unable to obtain a declaration from the Turners, as such a document could easily be
2  obtained through e-mail or the mails.  This case has been pending since January of 2009, and
3  Plaintiff offers no explanation as to why in the past 19 months she has been unable to obtain
4  this evidence.  Finally, Plaintiff has failed to identify with sufficient specificity the evidence
5  that these witnesses would be able to provide.  See Tatum v. City & County of San
6  Francisco, 441 F.3d 1090, 1100 (9th Cir. 2006).  Plaintiff identifies the subject matter of the
7  witnesses' testimony, but fails to identify the "specific facts that further discovery would
8  reveal, and explain why those facts would preclude summary judgment."  Id.  Therefore, this
9  motion is DENIED.

10  **B.     Discrimination**

11  Both Title VII and California's Fair Employment and Housing Act make it "an
12  unlawful employment practice for an employer . . . to discriminate against any individual
13  with respect to his compensation, terms, conditions, or privileges of employment, because of
14  such individual's . . . sex . . . ."  42 U.S.C. § 2000e-2(a)(1); see also Cal. Gov't Code
15  § 12940(a).  Courts employ the same legal analysis for claims under both statutes.  Metoyer
16  v. Chassman, 504 F.3d 919, 941 (9th Cir. 2007) ("California courts apply the Title VII
17  framework to claims brought under FEHA.").  "First, the plaintiff has the burden of proving
18  by the preponderance of the evidence a prima facie case of discrimination."  Texas Dept. of
19  Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  To establish such a prima
20  facie case, a plaintiff "must show that (1) he belongs to a protected class; (2) he was qualified
21  for the position; (3) he was subject to an adverse employment action; and (4) similarly
22  situated individuals outside his protected class were treated more favorably."  Chaung v.
23  Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).  "Second, if the
24  plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to
25  articulate some legitimate, nondiscriminatory reason for the employee's rejection."  Burdine,
26  450 U.S. at 253 (internal quotation marks and citation omitted).  "Third, should the defendant
27  carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of
28

5

the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Id.

Plaintiff fails to make a prima facie case of gender discrimination. The relevant portion of her brief in opposition fails even to mention—let alone cite admissible evidence in support of—the requirement of "an adverse employment action." Plaintiff similarly fails to cite admissible evidence of the fact that similarly situated individuals outside her protected class were treated more favorably. Instead, Plaintiff's brief focuses on whether or not there is evidence of discriminatory motive, noting that "the discriminatory animus exhibited by Plaintiff's superiors, including Stancill and Torres, constitutes direct evidence from which a jury could infer that the City's proffered reasons are pretextual and not general neutral . . . ." Opp. at 10. Aside from misunderstanding the nature of "direct evidence," this supposed animus is insufficient to state a prima facie case without some adverse employment action.

Plaintiff does mention some actions that could qualify as adverse employment actions in certain contexts, but fails to cite sufficient evidence to carry her burden on summary judgment. Primarily, Plaintiff seems concerned about numerous assignments that she requested but was not given. She also refers in a general fashion to interactions with Stancill and Torres. However, Plaintiff fails to cite evidence of these actions or discuss them with any particularity. For example, her brief mentions "lateral assignment transfers, the erroneous information contained in her evaluation prepared by Stancill, and later removed after a complaint being made to the police Officers' Association ('POA'), the lack of evaluation for 2006 under the pretext that she would not be getting one because she was out on a workers' compensation injury during a portion of the year, . . . the write-ups for being off of her beat when other male officers were repeatedly also off their beats and not written up . . . ." Opp. at 10. Plaintiff fails to cite any evidence of the listed incidents.[2]

---

[2] Plaintiff's opposition does cite to "Ex. C to Usoz Dec., 75:21-25" on page 2, but the referenced exhibit—which is a collection of excerpts from Plaintiff's deposition—does not include page 75. However, the cited page is included in the Hynes Declaration, submitted by the City. The cited lines reflect only that Plaintiff Trujillo believed she did not receive an assignment to the "tac officer" position because she "was a female." Hynes Decl., ex. A, 75:25. Plaintiff applied for this position in 2005 or 2006, id. at 74-75, and this claim is therefore untimely. Trujillo filed her charge with the EEOC

6

1   Even assuming the truth of these bare assertions—to the extent the allegations are
2   sufficiently detailed to permit an analysis—Plaintiff still fails to meet her burden. For
3   example, as for the allegedly false evaluation, Plaintiff does not inform the court as to the
4   nature of the falsehood. Without such evidence, it is impossible to determine whether the
5   falsehood is a "non-trivial employment action." Brooks v. City of San Mateo, 229 F.3d 917
6   (9th Cir. 2000). As for the failure to evaluate her in 2006, Plaintiff fails to cite evidence that
7   she was entitled to any particular evaluation. More importantly, it is hard to imagine how
8   this failure caused her any harm or was otherwise "adverse."

9   As for the "lateral assignment transfers" to which Plaintiff refers, she fails to counter
10  any of the City's arguments. As noted above, Plaintiff fails to cite to any evidence regarding
11  these lateral assignment, but a review of the evidence submitted by Defendant reveals that
12  there is no substance to her claims. First, her application to the tactical unit, to vice, to the
13  persons crimes desk, and to the sexual assault desk, all fall outside the limitations period.
14  See Hynes Decl., ex A, 47:12-21, 73:18-74:9, 75:21-76:16, 77:23-78:1, 79:10-12, 89:18-
15  90:1, 91:4-9, 97:15-98:18, 99:2-100:3 381:19-383:23, 384:13-16, 385:22-386:8. Morever, as
16  for the applications to vice, person crimes, and the sexual assault desk, not even Trujillo
17  suspects she was not given the positions because of her gender. See id.

18  This leaves Plaintiff's application for evidence technician and training/crime
19  prevention. However, while Trujillo's EEOC charge specifically references the failure to
20  assign her to the evidence technician assignment, it never mentions anything about the
21  training/crime prevention assignment. Because this constitutes a different claim of
22  discrimination which is not fairly encompassed by Trujillo's administrative complaint, it has
23  not been exhausted and cannot be raised for the first time in federal court. See Freeman v.
24  Oakland Unified School Dist., 291 F.3d 632, 637 (9th Cir. 2002) ("A reasonable EEOC

---

on September 8, 2008, which means that any claim based on events in 2005 or 2006 is untimely under both the federal and state statutes. See Cal. Gov't Code § 12960(d) (establishing 1-year statute of limitations); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) ("We conclude that a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period-180 or 300 days-set forth in 42 U.S.C. § 2000e-5(e)(1).").

7

investigation of that charge would not have focused on anything beyond" the conduct alleged in the charge); see also Lelaind v. City & County of San Francisco, 576 F. Supp. 2d 1079, 1090 (N.D. Cal. 2008). As for the evidence tech position, while there is evidence in the record that Trujillo repeatedly applied for and was denied the evidence tech position, there is no evidence that Plaintiff was denied because of her gender, nor that men were hired with any more frequency that women. Plaintiff notes that the evidence technician assignment was popular, Hynes Decl., ex. A, at 80:23-24, and this Court can find no evidence in the record that men were treated any differently from women in the assignment process.[3] In the absence of such evidence, Plaintiff is simply asking this Court to speculate that because she repeatedly applied for but was never given the position, that the only explanation is because she is a woman. Such an invitation to speculate fails to make out a prima facie case of gender discrimination.

**B.   Sexual Harassment**

Plaintiff also brings claims of sexual harassment against the City, Defendant Stancill, and Defendant Luis Torres. Individual liability can only be found on the part of Stancill and Torres under FEHA, as Title VII has been found not to impose individual liability on employees. Miller v. Maxwell's Intern. Inc., 991 F.2d 583 (9th Cir. 1993). "[H]arassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 63 (1996). "[H]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." Roby v. McKesson Corp., 47 Cal. 4th 686, 707 (2010).

All defendants move for summary judgment on the grounds that Plaintiff has no evidence of sexual harassment. As for Defendant Torres, Plaintiff's opposition papers address his role in two paragraphs without citing any evidence whatsoever. Instead,

---

[3] On the contrary, Plaintiff's testimony seems to reflect that all other applicants, men and women alike, were given a tech assignment after only a few requests. See Hynes Decl., ex. A, at 88:5-12. This suggests that even if Plaintiff was discriminated against, it was not because of her sex.

8

Plaintiff's opposition alleges in conclusory fashion that "Torres continued with a pattern of harassing behaviors towards her, which was not consistent with how Torres conducted himself with Plaintiff's male coworkers." Opp. at 13. Plaintiff fails even to discuss facts that could support this conclusion, let alone cite evidence to support it. Therefore, because Plaintiff has the burden in defending a motion for summary judgment of presenting a prima facie case, and because she has failed to cite any evidence whatsoever relating to Defendant Torres, summary judgment must be GRANTED in Torres's favor.

As for Defendant Stancill, while Plaintiff's opposition does discuss his behavior, Plaintiff fails to identify activity that rises to the level of sexual harassment. Plaintiff has presented evidence that she "was subjected to the repeated name calling of 'Baby' by Stancill." Opp. to Stancill at 7. See Usoz Decl., ex. C, at 244:16-22; ex. D, at 112:6-113:5.[4] However, in order to prevail on claim for sexual harassment "based on no more than a few isolated incidents of harassing conduct[, a plaintiff] must show that the conduct was severe in the extreme." Hughes v. Pair, 46 Cal. 4th 1035, 1043 (2009). As discussed above, the evidence submitted to the Court reflects that Stancill began calling Plaintiff "baby" in October of 2007. She requested in December of 2007 that he stop, and he did so. Plaintiff concedes that Stancill never referred to her as "baby" after that point. Therefore, the allegedly harassing behavior lasted for no more than two months, and immediately upon

---

[4] Plaintiff also notes that she "was aware, due to the rumors being told at work, that there were actions taken and words spoken by Defendant that she did not welcome but was subjected to by being one (1) of approximately seven (7) female sworn personnel at the Department." Opp. to Stancill at 7. However, Plaintiff cites no evidence supporting this allegation. In any event, Plaintiff fails to explain the nature of these rumors, and it is therefore impossible to determine whether the rumored conduct, even if true, would constitute sexual harassment. And regardless, to the extent Plaintiff's evidence of these rumors would be her own testimony, such evidence would likely be inadmissible hearsay.
Plaintiff also mentions the report prepared by Debra Estrin, who was hired by City to investigate complaints about Stancill. Plaintiff claims that Estrin's report revealed that Stancill "made comments about the way certain women dressed, including his preference for when a woman wore lacy t-shirts and that a female employee's jeans fit just fine; discussed breast augmentation and requested sex from one of the female employees." Opp. at 4. Once again, Plaintiff fails to cite to the report itself, and it appears she did not even submit the report as an exhibit. Defendants, however, did submit a copy. A review of this report reveals: (1) the request for sex was in fact reciprocated, and (2) the discussion of breast augmentation arose when a female officer asked him how to get time off for the surgery. See Kivel Decl., ex. A. In any event, none of these complaints had anything to do with Plaintiff Trujillo. The comments were not made to her and there is no evidence that she was aware of them at the time. Moreover, this report is almost certainly inadmissible hearsay.

being informed that Plaintiff objected to the nickname, Defendant Stancill ceased using it. Given the short duration of the conduct, the fact that Defendant ceased using the name upon being informed that Plaintiff objected to it, and the otherwise mild nature of the conduct, Plaintiff's evidence fails to make out a prima facie case of harassment against Stancill.[5]

As for Plaintiff's claim against the City, she has similarly failed to make out a prima facie case. Other than the allegations relating to Stancill's nickname for her, Plaintiff argues that she "was also subjected to the repeated derogatory, demeaning and sexually explicit emails and materials around the department. Although command staff, including the Chief of the Department knew that the material was offensive, derogatory and demeaning, the City did nothing to stop the distribution of such materials. The atmosphere surrounding Plaintiff was one of pervasive and generally accepted hostile and abusive conduct directed at Plaintiff, along with the other similarly situated plaintiffs." Opp. at 11. Plaintiff fails to cite to any evidence supporting these allegations. First, there is no evidence as to the specific nature of the e-mails, and so it would be impossible for a jury to conclude that the e-mails could constitute harassment. Second, there is no evidence as to whether Plaintiff ever received these e-mails or otherwise was made familiar with them. If Plaintiff was not aware in any way of these e-mails, they could not have "alter[ed] the conditions of her employment and create[d] an abusive work environment." Lyle, 38 Cal. 4th at 279. See Brooks v. City of San Mateo, 229 F.3d 917, 924 (9th Cir. 2000) ("Harassment directed towards others of which an employee is unaware can, naturally, have no bearing on whether she reasonably considered her working environment abusive."). In the absence of any such evidence, Plaintiff cannot prevail on a theory of hostile work environment sexual harassment. See also Keenan v. Allan, 91 F.3d 1275, 1279 ("As other courts have noted, '[i]t is not our task, or that of the

---

[5] Plaintiff cites to other evidence regarding Stancill's behavior, such as his rejection of a number of her reports, but this other evidence relates to retaliation rather than to sexual harassment itself. While Plaintiff fails to make this distinction in her papers, her testimony makes clear that she believed the conduct to be a form of retaliation precipitated by her request that Stancill not call her baby. Rejecting a report is not "sexual conduct," Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 610 (1989), but it could be retaliation for an employee's assertion of her rights. Therefore, it will be analyzed under the next section. See also Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 262, 279 (2006) ("Under Title VII, a hostile work environment sexual harassment claim requires a plaintiff employee to show she was subjected to <u>sexual advances, conduct or comments</u> . . . ." (emphasis added)).

10

1 district court, to scour the record in search of a genuine issue of triable fact. We rely on the
2 nonmoving party to identify with reasonable particularity the evidence that precludes
3 summary judgment." (quoting Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir.
4 1995)).

The pending motions for summary judgment on the claim for sexual harassment are therefore granted.

## C. Retaliation

Trujillo also alleges that she suffered retaliation at the hands of the City as a consequence of her allegations that she had been sexually harassed. "Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). California's FEHA "makes it an unlawful employment practice for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1065 (2005) (quoting Cal. Gov't Code § 12940(h)). Under both statutes, to establish a prima facie case of retaliation Trujillo must show (1) she engaged in a protected activity, (2) the City subjected her to an objectively materially adverse action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," and (3) a causal link existed between Trujillo's protected activity and the City's action. White, 548 U.S. at 67 (internal quotation marks and citation omitted). If Trujillo can establish a prima facie case, the City is required to offer a legitimate, nonretaliatory reason for the adverse action. Yanowitz, 36 Cal. 4th at 1041-42. "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation drops out of the picture, and the burden shifts back to the employee to prove intentional retaliation." Id. at 1042.

11

Both Title VII and FEHA provide for relief only for non-trivial retaliation. As the Supreme Court has explained, "[a]n employee's decision to report discriminatory behavior cannot immunize the employee from those petty slights or minor annoyances that often take place at work and that all employees experience" because "normally petty slights, minor annoyances, and simple lack of good manners will not" deter victims of discrimination from complaining to the EEOC, the courts, and their employers." White, 548 U.S. at 68. Similarly, California Courts have explained that

> Minor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable, but adverse treatment that is reasonably likely to impair a reasonable employee's job performance or prospects for advancement or promotion falls within the reach of the antidiscrimination provisions of sections 12940(a) and 12940(h).

Yanowitz, 36 Cal. 4th at 1054-55.

The City moves for summary judgment on the ground that Plaintiff has failed to make a prima facie case, and once again, Plaintiff fails to satisfy her burden in opposing summary judgment. The episodes to which Plaintiff refers either do not amount to materially adverse actions, or are thoroughly explained by a non-discriminatory rationale (usually both). Therefore, the City's motion for summary judgment must be granted.

First, Plaintiff refers to the fact that after she asked Stancill to stop calling her "baby," she "noticed that her reports were being rejected by Stancill." Opp. at 6. Trujillo suggests that this was a form of retaliation. However, there is no evidence that this was anything more than a minor annoyance. See Usoz Decl., ex. D, at 113:11-14. Plaintiff was never docked pay, was never disciplined, and apparently the only consequence was that she had to redo some reports. The evidence further reflects that Stancill treated other officers the same way, as he had been informed by his superiors that previous reports were deficient in numerous ways. See Stancill Decl. ¶ 14;[6] see also Kivel Decl., ex. L, at 100:21-104:15. This

---

[6] Plaintiff objects to this paragraph of Stancill's declaration on the ground that it constitutes hearsay. This is incorrect. The statement in question, that Stancill had been told "that the reports [his supervisors] were receiving from officers under our supervision were deficient," is not being offered for the truth of the matter asserted. See Federal Rule of Evidences 801. On the contrary, it is being

United States District Court
For the Northern District of California

1 nondiscriminatory rationale has not been challenged by Plaintiff in her papers. Finally, as
2 noted above, Stancill was no longer Plaintiff's supervisor as of January 2008, so this
3 "retaliation" could not have occurred for more than six days. See Hynes Decl., ex. A, 308:5-
4 20.

5       Plaintiff also notes that, on one occasion, Stancill did not respond to one of her
6 deceased on arrival calls. Usoz Decl., ex. C, 293-94. Plaintiff provides no evidence or
7 argument to explain how this discrete event could have constituted a materially adverse
8 action, and Defendant Stancill avers that as a new sergeant he simply misunderstood whether
9 or not he was required to respond to all deceased on arrival calls. Stancill Decl. ¶ 19. Given
10 the isolated nature of this incident, it is impossible to conclude that such behavior "materially
11 affects the terms, conditions, or privileges of employment." Yanowitz, 36 Cal. 4th at 1042.
12 Moreover, Stancill has submitted evidence of a nondiscriminatory reason that he failed to
13 report. For the same reasons, Plaintiff's evidence that Stancill passed over her during line-
14 ups and spoke with her about submitting overtime slips, does not rise to the level of a
15 materially adverse action.[7] See id., ex. C, at 299-300.

16       Next, Plaintiff contends that Stancill lied to her in an evaluation when he represented
17 that he had "documented an incident in plaintiff's employee incident log." Usoz Decl., ex.
18 C, at 304:3-4. Plaintiff testified in her deposition that he had not, in fact, recorded anything
19 in the incident log. Id. Once again, the Court is left to imagine how this episode adversely
20 impacted Plaintiff. Plaintiff's opposition merely mentions the incident, but in no way
21 explains how such a review could constitute an adverse action. As an initial matter, Plaintiff
22 explains that the incident log is "a form of documenting any sort of discipline with an
23 employee." Id. at 304:12-13. Thus, this adverse action concerns referring to an incident that

---

25 offered as evidence of Stancill's motivations. In other words, it is immaterial whether the previous
26 reports were in fact deficient, because the point is that Stancill was told they were deficient, and hence had a reason to more closely supervise his officers' reports. This objection is therefore overruled.

27     [7] As for the overtime issue, Trujillo testified that she understood there had been a general policy
28 change regarding overtime slips, which required not holding on to overtime slips. Hynes Decl., ex. A, 167:19-20, 364:12-367:21. Put another way, Trujillo testified that Stancill had a nondiscriminatory reason to address the overtime issue with her.

13

is not contained in the log, and hence is not discipline in any way. Indeed, Plaintiff testified that Stancill had never disciplined her. Id at 305:5-6. In other words, Plaintiff contends that although Stancill never disciplined her, he once suggested to her that he had in fact disciplined her. Again, Title VII's "antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." White, 548 U.S. at 67. Because Plaintiff can identify no injury or harm related to this incident, it is not actionable retaliation.

Next, Plaintiff discusses the fact that she was fearful of Defendant Stancill. She notes that she once heard Defendant say that he would get even with all of those who had "talked shit" about his promotion, and that others had heard that Stancill announced that he "did not forget." Usoz Decl., ex. B, at 89:1-6. As an initial matter, there is no evidence that these announcements were related in any way to Plaintiff's complaints. On the contrary, the comments appear to relate to criticism that Stancill had received regarding his promotion. Incredibly, Plaintiff cites the fact that she "understood that Defendant grew up on the street and that he had connections with the people he grew up with in the streets of Oakland, and that the people he is referring to are not all law abiding citizens," as evidence of retaliation. Opp. at 7. Plaintiff argues that she reasonably feared Stancill because of this background. To put it in other words, Plaintiff suggests that because Defendant Stancill grew up in Oakland, he was prepared to use violence to retaliate against those who crossed him. It is hard to imagine evidence that less relevant. Whether or not Stancill holds grudges is not probative of whether he retaliated in this case. There is no reason to expect that such "evidence" would ever be admissible at trial, as it is quintessential character evidence, and the second quotations is likely inadmissible as hearsay as well. Plaintiff cannot cure her failure to present evidence of retaliation simply by asserting that she is afraid of Defendant because he grew up in Oakland.

Finally, Plaintiff notes that after the City concluded its own investigation into Stancill's behavior, Stancill "wore a t-shirt around the Department that said 'Acquitted'

14

across the front." Opp. at 9.  While this conduct is both unprofessional and inappropriate, once again there is no evidence that it altered the conditions of Plaintiff's employment.

For all these reasons, summary judgment is also appropriate as to Plaintiff's claim for discrimination.  The motion is therefore GRANTED.

## Conclusion

Defendants' motions for summary judgment must be granted because Plaintiff has failed to meet the standards imposed by Rule 56.  She fails to cite admissible evidence and relies instead on unsubstantiated allegations and unsupported conclusions.   It is not a court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996).  Alternatively, to the extent this Court has been able to identify evidence that is relevant to Plaintiff's claims, it is insufficient to meet the standards under Title VII and FEHA.  Therefore, the motions for summary judgment are GRANTED..

**IT IS SO ORDERED.**

Dated: August 1, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE